**2014-1267**

# United States Court of Appeals
# for the Federal Circuit

RELUME CORPORATION TRUST, DENNY FOY, SHAWN GRADY,
ANDMARIE HOCHSTEIN, Trustees,

*Plaintiffs-Appellants,*

v.

GE LIGHTING SOLUTIONS, LLC,

*Defendant-Appellee.*

*Appeal from the United States District Court for the District of Delaware
Case No. 1:12-CV-00871-LPS, Judge Leonard P. Stark*

## BRIEF FOR APPELLEE GE LIGHTING SOLUTIONS, LLC

ROBERT J. MCAUGHAN, JR.
BRUCE J. CANNON
SUTTON MCAUGHAN DEAVER PLLC
Three Riverway, Suite 900
Houston, TX 77056
Telephone: (713) 800-5700
Facsimile: (713) 800-5699

RICHARD L. RAINEY
Executive Counsel, IP Litigation
GENERAL ELECTRIC COMPANY
3135 Easton Turnpike
Fairfield, CT 06828
Telephone: (203) 373-2542

*Counsel for Defendant-Appellee GE Lighting Solutions, LLC*

May 15, 2014



# CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee certifies the following:

**1.     The full name of every party or amicus represented by me is:**

GE Lighting Solutions, LLC.

**2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

Not Applicable.

**3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

General Electric Company, which is a majority owner of GE Lighting Solutions, LLC.

**4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this court are:**

Robert J. McAughan and Bruce J. Cannon
SUTTON MCAUGHAN DEAVER, PLLC

Elizabeth Wilburn Joyce
PINCKNEY, WEIDINGER, URBAN & JOYCE LLC

Richard L. Rainey
EXECUTIVE COUNSEL, IP LITIGATION FOR GENERAL ELECTRIC COMPANY.

i

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ...............................................................................i

TABLE OF AUTHORITIES ...............................................................................iv

STATEMENT OF RELATED CASES ..................................................................vi

COUNTERSTATEMENT OF THE ISSUE............................................................1

COUNTERSTATEMENT OF THE FACTS ...........................................................1

   A.  GE Acquired a License to the Reissue Patent When the Settlement
       Agreement, Which Includes a Broad License Grant, Was Assigned to
       GE ......................................................................................................1

   B.  The District Court Properly Granted Summary Judgment of Non-
       Infringement Finding that GE Is Licensed Under the Reissue Patent
       Because of the Assigned Settlement Agreement.............................................3

SUMMARY OF ARGUMENT ..............................................................................7

ARGUMENT .........................................................................................................7

   I.  THE DISTRICT COURT'S SUMMARY JUDGMENT OF NON-
      INFRINGEMENT BY LICENSE SHOULD BE AFFIRMED .....................7

   II.  The District Court Properly Rejected RCT's Argument that the
      Settlement Agreement Implicitly Precludes Assignment of the Patent
      License ...............................................................................................9

      A. Patent Licenses are Transferable if Made Transferable in the
         Agreement Granting the License; RCT's Implication to the
         Contrary is Wrong ...................................................................9

      B. RCT's Contextual Arguments for Reading a Section 2 Carve-out
         into Section 14 Are Incorrect and Ignores the Text of the
         Settlement Agreement ..............................................................16

        1. The District Court's Construction of the Settlement Agreement
           Does Not Render Section 5 "Completely Superfluous" ....................16

2. RCT's Paragraph-by-Paragraph Analysis Would Render Section 14 Virtually Meaningless .......................................................17

III. RCT's Argument Concerning an Alleged Defect in the Closing Documents is Without Merit ..........................................................19

A. There Are No Genuine Issues of Material Fact Relating to the Assignability of the Settlement Agreement or Its Assignment to GE ...............................................................................................19

B. RCT's Argument is Based on a Misreading of the Asset Purchase Agreement and Lacks Factual Support .....................................20

C. RCT's Parole Evidence Argument is Misplaced.......................21

D. RCT's Parole Evidence Argument is Not Presented Below, and Thus Was Waived.......................................................................22

CONCLUSION ....................................................................................23

CERTIFICATE OF SERVICE .................................................................24

CERTIFICATE OF COMPLIANCE ........................................................25

# TABLE OF AUTHORITIES

## Cases

*Baum v. Rock et al.,*
106 Colo. 567 (Colo. 1940) ...............................................................11

*Bd. of Regents of the Univ. of Nebraska v BASF Corp.,*
2007 U.S. Dist. LEXIS 88497 (D. Neb. Nov. 6, 2007) ........................14

*Fransmart, LLC v. Freshii Dev., LLC,*
768 F. Supp. 2d 851 (E.D. Va. 2011) ...................................................8

*Gillespie v. DeWitt,*
280 S.E.2d 736 (1981) ................................................................... 8, 14

*Golden Bridge Tech., Inc. v. Nokia, Inc.,*
527 F.3d 1318 (Fed. Cir. 2008) ...........................................................22

*Grinnell Bros. v. Brown,*
171 N.W. 399 (1919) ...........................................................................22

*Hy King Associates, Inc. v. Versatch Mg. Indus., Inc.,*
826 F. Supp. 231 (E.D. Mich. 1993) ............................................. 6, 15

*In re Cooper,*
242 B.R. 767 (Bankr. S.D. Ga. 1999) ...................................................8

*K N Gas Supply Servs., Inc. v. Am. Prod. P'ship-V, Ltd.,*
994 F. Supp. 1283 (D. Colo. 1998), aff'd, 201 F.3d 448 (10th Cir. 1999) ...........8

*Kalian at Poconos, LLC v Saw Creek Estates Cmty. Ass'n, Inc.,*
275 F. Supp. 2d 578 (M.D. Pa. 2003) ........................................... 12,14

*Katahdin Ins. Grp. v. Elwell,*
2001 WL 1736572 (Me. Super. July 9, 2001) ................................ 8, 14

*Ketcherside v. Paramount Fitness Corp.,*
2013 WL 1091079 (E.D. Mich. Mar. 15, 2013) ...................................18

*McCain v. Wells Fargo Home Loans,*
2007 WL 4965465 (E.D. Mich. Nov. 26, 2007) .....................................7

*Northwestern Cooperage & Lumber Co. v. Byers,*
  95 N.W. 529 (Mich. 1903).....................................................................................7

*Pocono Realty Co. v. Lamar Advertising Co.,*
  395 Fed. Appx. 903 (3d Cir. 2010)......................................................................8

*Relume Corp. v. Dialight Corp.,*
  63 F. Supp. 2d 788 (E.D. Mich. 1999)
  aff'd, 4 F. App'x 893 (Fed. Cir. 2001) ................................................................2

*Stenke v. Masland Dev. Co.,*
  394 N.W.2d 418 (Mich. Ct. App. 1986)..................................... 5, 7, 9, 10, 11, 12

*Vanerian v Charles L Pugh Co., Inc.,*
  761 N.W.2d 108 (Mich. Ct. App. 2008)..............................................................18

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action was previously before this or any other appellate court.

Defendant-Appellee's counsel is not aware of any other cases pending in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## COUNTERSTATEMENT OF THE ISSUE

Whether the district court correctly concluded that assignment of a Settlement Agreement resulted in an assignment of a patent license granted in the Settlement Agreement when:

(1) the Settlement Agreement included a global "successors and assigns" clause permitting unrestricted assignment of the agreement as a whole, and

(2) there was no language in the Settlement Agreement carving the license rights out of the rights that may be assigned or otherwise indicating that the patent license would be excluded from the permitted assignment.

## COUNTERSTATEMENT OF THE FACTS

The dispute involves successor entities, a successor patent and a settlement agreement.

### A. GE Acquired a License to the Reissue Patent When the Settlement Agreement, Which Includes a Broad License Grant, Was Assigned to GE

Appellant Relume Corporation Trust and the individual appellants (collectively "RCT") are the successors of Relume Corporation ("Relume"). Appellee GE Lighting Solutions, LLC ("GE") is the successor of Ecolux, Inc. The asserted patent (United States Patent RE 42, 161) (hereinafter "the reissue patent"

or "the '161 Reissue patent") is the reissue of an original patent (United States Patent No. 5,661,645) (hereinafter "the original patent" or "the '645 patent") owned by Relume.

In 1998, RCT's predecessor (Relume) sued GE's predecessor (Ecolux) for alleged infringement of the original patent. *See Relume Corp. v. Dialight Corp.,* 63 F. Supp. 2d 788, 791–92 (E.D. Mich. 1999) *aff'd,* 4 F. App'x 893 (Fed. Cir. 2001). The district court in that action entered a summary judgment that the original patent was not infringed and partially invalid. *Id.*

Before the judgment was appealed, Relume and Ecolux entered into a settlement agreement ("Settlement Agreement"). A180–A186. In Section 2 of the Settlement Agreement, Relume granted GE's predecessor a license under the original patent and any reissues:

> Relume, and all of its officers, employees, assigns, and agents, including but not limited to Mr. Peter Hochstein and Mr. Denny Foy, hereby grants to Ecolux a paid-up, royalty free, non-exclusive license under the '645 and '909 patents . . . and any ***reissues*** . . . thereof . . . .

A181 (emphasis added). Section 14 of the Settlement Agreement contained language permitting broad, unrestricted assignment of the Settlement Agreement by Ecolux, indicating that the Settlement Agreement "shall inure to the benefit of, and be binding upon, the parties and their respective affiliates, ***successors and assigns***." A184 at ¶14 (emphasis added).

2

Within a year of execution of the Settlement Agreement, GE acquired Ecolux and the Settlement Agreement was assigned to GE. A5, A188–A243, Appellants' Br. at 3.

Over eleven years after the Settlement Agreement, the reissue patent asserted in this action issued. A26. It was assigned to RCT, and RCT initiated the present action for alleged infringement. A46–A52.

### B. The District Court Properly Granted Summary Judgment of Non-Infringement Finding that GE Is Licensed Under the Reissue Patent Because of the Assigned Settlement Agreement

GE moved for summary judgment that it could not infringe the asserted reissue patent because: (i) the Settlement Agreement granted Ecolux a license under the reissue patent; (ii) the Settlement Agreement was to inure to the benefit of Ecolux's successors and assigns; (iii) GE acquired Ecolux and was, therefore, a "successor" to Ecolux; (iv) Ecolux assigned the Settlement Agreement to GE, such that GE was an "assign" of the Settlement Agreement; and (v) as the successor and assign of Ecolux with respect to the Settlement Agreement, GE was entitled to the benefit of the patent license granted in the Settlement Agreement.

RCT conceded that the global, unrestricted Section 14 "successors and assigns" clause permitted assignment of the Settlement Agreement to GE, but argued that the assignment of the Settlement Agreement did not result in an assignment of the patent license granted in Section 2 because Section 2 did not

3

include separate language expressly indicating that the patent license was assignable.

In a thorough and well-reasoned opinion, the district court granted GE's motion, concluding that the Settlement Agreement expressly permitted assignment as a whole and that GE, as the assignee of the entire agreement, was therefore licensed under the reissue patent. A1–A13. "The only reasonable interpretation of Section 14 is that the parties intended Ecolux's successors and assigns to enjoy all of the rights of Ecolux under the Agreement." A8

The district court's opinion found that the following material facts and issues were not in dispute:

- That Ecolux transferred the Settlement Agreement to GE as part of GE's acquisition of Ecolux. A5

- That, for purposes of this motion, GE is a successor of Ecolux. *Id.*

- That the patent licensed granted in the Settlement Agreement applies to the '161 Reissue patent. *Id.*

- That the Settlement Agreement is governed by Michigan law and that also applicable is the federal common law principle that patent licenses are not generally assignable without language expressly permitting assignment. *Id.*

4

- That Section 14 of the Settlement Agreement permits the transfer of the Settlement Agreement generally. *Id.*

The district court's opinion discussed and applied the applicable legal principals, including the Michigan case of *Stenke v. Masland Dev. Co.*, 394 N.W.2d 418, 425 (Mich. Ct. App. 1986) and holdings in other jurisdictions, which indicate that the inclusion of a broad "successors and assigns" clause in an agreement—like the one in the Settlement Agreement—permits assignment of the agreement in its entirety and allows successors and assigns to benefit from all rights granted in the agreement:

> Section 14 broadly, and without any express exclusion, provides that "[t]his Agreement shall inure to the benefit of . . . ***successors and assigns***." (Emphasis added). Nothing in Section 14 ***excludes*** the rights granted in Section 2 from those rights that may be transferred to Ecolux's successors and assigns. Nor does any other provision in the Agreement provide for such exclusion. The Court agrees with GE that, "[w]hen considered within the context of the Agreement as a whole, it is clear that Section 14 was included to allow Ecolux's affiliates, successors and assigns to benefit from all of the rights granted in the Agreement including specifically, the license rights granted in Section 2.

A6 (emphasis in original).

In reaching its conclusion, the district court carefully considered each argument presented by RCT, but ultimately found that "RCT's approach to the Agreement is untenable." A7. For example, the district court found that RCT's contention that the Settlement Agreement ***was generally assignable*** but that

5

specific rights granted therein *were not*, would improperly "require[] a paragraph-by-paragraph analysis of the Agreement in order to determine assignability." *Id.* Considering RCT's arguments within the context of the Settlement Agreement as a whole (not just in light of isolated sections) the district court found that RCT's contention that "assignability is limited only to those portions of the Agreement that expressly reference not just Ecolux but *also* its successors and assigns . . . would lead to odd results, especially with respect to provisions" not directly at issue in the summary judgment motion.  A7 (emphasis in original).

In addition to addressing RCT's arguments based on the text of the Settlement Agreement, the district court also considered the cases relied on by RCT in opposing GE's motion and found them inapplicable.  A8–A9.  For example, the district court found that the case upon which RCT primarily relied, *Hy King Associates, Inc. v. Versatch Mg. Indus., Inc.,* 826 F. Supp. 231 (E.D. Mich. 1993) inapplicable because *Hy King* "involved a 'successors and assigns' provision that allowed assignment 'only with the consent of the principal,' an unambiguous restriction on assignability not found in the [Settlement] Agreement here."  A8-A9.

RCT appealed the district court's grant of summary judgment to this Court, advancing the same arguments presented and rejected by the district court.

## SUMMARY OF ARGUMENT

The Settlement Agreement granted GE's predecessor a license covering the reissue patent and permitted assignment.  It was assigned to GE.  Nothing in the Settlement Agreement indicates that the patent license would be excluded from the permitted assignment.  As such, GE is licensed under the reissue patent and cannot infringe as a matter of law.

## ARGUMENT

## I.  THE DISTRICT COURT'S SUMMARY JUDGMENT OF NON-INFRINGEMENT BY LICENSE SHOULD BE AFFIRMED

It is undisputed that Michigan law governs the interpretation of the Settlement Agreement.  Under Michigan law, when an agreement expressly permits unrestricted assignment and there is no language expressly "carving-out" some of the rights granted in the agreement from the assignment, all of the rights granted in the agreement may be transferred (including rights that would be non-transferable in the absence of a provision permitting transfer).  *See Stenke*, 394 N.W.2d at 425.  *See also McCain v. Wells Fargo Home Loans*, 2007 WL 4965465, at *3 (E.D. Mich. Nov. 26, 2007) (successors and assigns language made mortgage freely assignable).  *See also Northwestern Cooperage & Lumber Co. v. Byers*, 95 N.W. 529, 539 (Mich. 1903) (suggesting that "the contract itself contemplated that it might be assigned" by allowing for renewal so long as the contracting party or "their successors and assigns" used the property).

7

This is consistent with the approach elsewhere. *See, e.g., Fransmart, LLC v. Freshii Dev., LLC,* 768 F. Supp. 2d 851, 861 (E.D. Va. 2011) (collecting cases). *See also Pocono Realty Co. v. Lamar Advertising Co*., 395 Fed. Appx. 903, 907 n.3 (3d Cir. 2010) (successors and assigns language made easement assignable); *K N Gas Supply Servs., Inc. v. Am. Prod. P'ship-V, Ltd.*, 994 F. Supp. 1283, 1286 (D. Colo. 1998), *aff'd*, 201 F.3d 448 (10th Cir. 1999) (otherwise unassignable contract made assignable by insertion of "successors and assigns" provision); *In re Cooper*, 242 B.R. 767, 770 (Bankr. S.D. Ga. 1999) (successors and assigns clause made settlement agreement freely assignable, even if otherwise non-assignable); *Gillespie v. DeWitt*, 280 S.E.2d 736, 743 (1981) (successors and assigns language made guaranty freely assignable); *Katahdin Ins. Grp. v. Elwell*, 2001 WL 1736572, *1–*4 (Me. Super. July 9, 2001) (successors and assigns clause made employment agreement freely assignable).

Applying the controlling law to the Settlement Agreement at issue here, it is undisputed that the Settlement Agreement has been assigned to GE and that the reissue patent "is within the unrestricted license provision of the Settlement Agreement." Appellants' Br. at 3. *See also id.* at 8 (noting that the Settlement Agreement "provided authorization to transfer or assign the Settlement Agreement to a future unknown party such as GE"). Moreover, there is no language in the Settlement Agreement that restricts or limits the rights that could be assigned or

8

transferred.  A180–A184.  Accordingly, the district court was correct to conclude that because "the entirety of the Settlement Agreement is transferable, and nothing in that Agreement expressly excludes the license in Section 2 from the general transferability of the entire Agreement . . . the license was transferable."  *See* A0006 (*citing Stenke,* 394 N.W.2d at 425).

## II.  The District Court Properly Rejected RCT's Argument that the Settlement Agreement Implicitly Precludes Assignment of the Patent License

RCT nonetheless argues that the patent license granted in Section 2 of the Settlement Agreement should be implicitly excluded from the permitted assignment because the language of license in Section 2 references only "Ecolux" and other provisions in the Settlement Agreement, namely Section 5, reference "Ecolux, its directors, officers, employees, agents, consultants, patent companies, subsidiaries, successor-in-interest, assigns, customers, dealers, distributors, and each of them."  *See* Appellants' Br. at 8.  As noted by the district court, "RCT's approach to the agreement is untenable."  A7.

### A.  Patent Licenses are Transferable if Made Transferable in the Agreement Granting the License; RCT's Implication to the Contrary is Wrong

GE does not dispute that patent licenses are generally considered personal and not assignable in the absence of language permitting assignment.  Here, however, there *is* language explicitly permitting assignment: ***Paragraph 14 of the***

*Settlement Agreement*.  That language is explicit, unambiguous and unrestricted:

"This Agreement shall inure to the benefit of, and be binding upon, the parties and

their respective affiliates, ***successors and assigns***."  A184 (emphasis added).

Nothing in the "assignability" paragraph (or any other part of the Settlement

Agreement) carves the patent license rights out of the rights that may be assigned.

Nothing in the assignment language applies to only some (but not all) provisions of

the Settlement Agreement.  On the contrary, the language of Paragraph 14 broadly

proclaims that "***This <u>Agreement</u>***" is assignable.  A184 (emphasis added).

"This Agreement" is a reference to the Settlement Agreement as a whole.

*See* A180.  Had the parties intended to exclude some of the rights granted in the

Settlement Agreement from the broad assignment clause, or permit assignment of

something other than the entire agreement, they could easily have done so.  They

did not.  As properly found by the district court, under controlling Michigan law,

therefore the entirety of the Settlement Agreement may be assigned and transferred

to assignees and successors.  *See Stenke*, 394 N.W.2d at 424–25.

*Stenke* followed the established principal that if a provision in an agreement

makes one party's interests transferable (as RCT acknowledged Section 14 does

here) in the absence of clear language to the contrary there is no legal basis for

excluding or carving out specific granted rights from the permitted transfer.  *Id.*

*Stenke* involved an agreement that included one group of provisions granting a lease on certain property and another provision granting an option right to purchase the property. *Id*. The agreement at issue included language indicating that the original lessee could assign the lease or sublet the premises without the lessor's consent. *Id*. The original lessee assigned the agreement to a third party and the third party attempted to exercise the option rights granted in the agreement. *Id*. The lessor argued that the assignment clause applied only to the lease rights and that it did not apply to the option rights. *Id*. On appeal, applying Michigan law, the Michigan appeals court found that the language permitting transfer permitted transfer of ***all rights*** in the lease agreement because nothing in the agreement specifically carved out the option rights from the permitted transfer:

> [Lessor's] interpretation of the lease does not comport with Michigan law. Unless expressly excluded, the assignment of a lease vests the assignee of all the rights of the former lessee. Contrary to [Lessor's] contention, the purchase option clause is not separable from the leased interest. ***The documents in question did not expressly exclude assignment of the option to purchase and consequently the trial court did not err in ruling that the option was assignable.***

*Id*. at 425 (emphasis added; citations omitted). *See also Baum v. Rock* et al., 106 Colo. 567, 575 (Colo. 1940) ("The courts generally have held that a contract which otherwise might not be assignable, is made so by the insertion therein of a provision binding assigns of the parties.").

*Stenke* reflects the majority approach. For example, in *Kalian at Poconos, LLC v Saw Creek Estates Cmty. Ass'n, Inc.,* 275 F. Supp. 2d 578 (M.D. Pa. 2003), a case presenting issues similar to those presented in this action, the court was faced with an agreement in which one party (the "Granting Party") granted a number of different rights to the other (the "Receiving Party"). Among the rights granted to the Receiving Party were: (i) the right to retain a certain status for the sale of inventory; and (ii) the right not to make certain payments for certain activities. *Id.* at 594. Of note, the language granting the right to retain a certain status for the sale of inventory included language specifically indicating that the rights would be retained by the Receiving Party's "successors and assigns" (similar to Paragraph 5 in the Settlement Agreement in this action) while the language granting the right not to make the payments ***did not*** include any such reference. *Id.* at 594–95. The *Kalian* agreement, however, included a global assignability/transfer clause, like the one here, stating that the agreement would "inure to the benefit of the parties and their respective heirs, successors and assigns." *See id.* at 594–97.

After the original agreement was executed in *Kalian*, it was assigned by the Receiving Party to another party (the "Assignee"). *Id.* at 594. The Assignee, relying on the right granted in the agreement to not make payments, did not make payments for the activities described in the agreement. The original Granting Party

12

then brought an action against the Assignee seeking payments for the activities described in the agreement. *Id.* at 580. The Granting Party argued that the right to not make payments was, like most rights of non-payment, presumptively not transferable. *Id.* at 594–595. Similar to RCT's argument here, the Granting Party thus argued that because the language granting the right to retain a certain status for the sale of inventory specifically referred to "successors" and "assigns" and language granting the right of non-payment did not, the court should read the assignment language as implicitly precluding assignment of right of non-payment. *Id.* The Court rejected that argument, properly finding that—as a matter of law— the global assignability clause renders the entire agreement and all rights granted therein assignable:

> Paragraph 19 of the Settlement Agreement, which states that the Settlement Agreement "shall bind *and inure to the benefit of the parties and their respective heirs, successors and assigns* . . . is contrary to any implication that [the right of non-payment granted in] paragraph 12(b) is not assignable. . . . Here, the Settlement Agreement is susceptible to only one *reasonable* interpretation-that Lehman-Pike's declarant rights were freely assignable. The contract says nothing to the contrary. Indeed, paragraph 19 of the Settlement Agreement makes clear that any and all contractual rights could be assigned. . . . Additionally, paragraph 12(b) [granting the non-payment rights] is not ambiguous as to the assignability of the fee exemption. Rather, it is silent. When there is no express restriction on assignment of rights in a contract, and where, as here, the agreement inures to the benefit of "the parties and their . . . assigns," it is unreasonable to construe the provision as restricting assignments.

*Id.* at 595–97.

Just as the right of non-payment was assignable in *Kalian*, the license rights granted in the Settlement Agreement here were assignable to GE. *See also Gillespie v. DeWitt*, 280 S.E.2d 736, 743 (1981); *Katahdin Ins. Grp. v. Elwell*, 2001 WL 1736572, *1–*4 (Me. Super. July 9, 2001) and cases cited *supra*, at 7–8.

The cases cited in Appellants' Brief ***do not*** stand for the proposition that an unrestricted assignment clause in a settlement agreement granting a patent license does not permit assignment of the license. On the contrary, they stand for the pedestrian propositions that—in the absence of language of assignment—a patent license is generally not assignable and that parties to a contract may expressly agree to exclude rights from an assignment clause.

Specifically, *Bd. of Regents of the Univ. of Nebraska v BASF Corp.*, 2007 U.S. Dist. LEXIS 88497 (D. Neb. Nov. 6, 2007), discussed on pages 10–11 of Appellants' Brief, involved a case where a company tried to assign license rights granted to it in an agreement that—unlike the agreement at issue here—***did not include*** a provision explicitly stating that the agreement would inure to the benefit of the company's successors and assigns and permitting transfer of the agreement. *Id.* (noting that the agreement lacked any language permitting assignment). The agreement in *University of Nebraska*, therefore, is materially different from the Settlement Agreement here which ***includes*** a section explicitly permitting unrestricted transfer of the Agreement to successors and assigns.

14

*Hy King Associates, Inc. v. Versatch Mg. Indus., Inc.,* 826 F. Supp. 231 (E.D. Mich. 1993) involved a "successors and assigns" clause with an "express prohibition of assignability absent consent." *See* Appellants' Br. at 16–17. As such, the court's finding in that case that an attempted assignment without consent was to be expected. Importantly, the *Hy King* court directly recognized that if the successors and assigns clause was not specifically limited (like the one here) the otherwise unassignable personal agreement would have been assignable. *Hy King Associates*, 826 F. Supp. at 239 ("***If it had been the intention*** of the parties that Mr. King could substitute a corporation or another individual for himself as defendant's exclusive sales representatives, ***certainly the 'successors and assigns' clause would not have been specifically limited.***") (emphasis added). This recognition flows from the established principle that an agreement containing an unlimited successors and assigns clause permits assignment of all rights granted therein.

In short, there is no proper legal basis for excluding the patent license rights in the Settlement Agreement from the assignment permitted and authorized by Section 14 of the agreement.

**B.** **RCT's Contextual Arguments for Reading a Section 2 Carve-out into Section 14 Are Incorrect and Ignores the Text of the Settlement Agreement**

In addition to suggesting that there are legal reasons for its position, RCT argues that a contextual analysis of the Settlement Agreement indicates that the Section 2 patent license rights should be excluded from the transfer permitted by Section 14. These arguments are incorrect and ignore the actual text of the Settlement Agreement. Indeed, the district court thoroughly addressed and rejected most of RCT's arguments in detail. A7–A9.

**1.** **The District Court's Construction of the Settlement Agreement Does Not Render Section 5 "Completely Superfluous"**

RCT argues that not excluding the patent license rights granted in Section 2 from the broad assignment permitted by Section 14 would make Section 5 "completely superfluous." Appellants' Br. at 8. Not so.

The license granted in Section 2 of the Settlement Agreement is limited to only _two patents_ then owned by Relume and the progeny and foreign counterparts of those patents. A181. It is not limited, however, to the products accused of infringement in 1998—it applies to all "traffic signals, railroad signals, pedestrian signals, message boards, arrow boards, and barrier signals, and similar land based devices embodying the inventions thereof." _Id._ It therefore grants a license under

16

the identified patents for a wide range of products that could come into being well after the date of the Settlement Agreement.

The Section 5 covenant not to assert, on the other hand, is far more expansive with respect to the patents it encompasses but more narrow with respect to products.  In particular, the Section 5 covenant not to assert covers "***any*** other U.S or foreign patents which [Relume, its officers, employees assigns and agents (including Peter Hochstein and Denny Foy)] currently owns or has rights in before and/or as of the effective date of this Agreement" ***and*** "***any*** U.S. or foreign patents issuing from any patent applications which [Relume, its officers, employees, agents and assigns] owns rights in before and/or as of the effective date of this Agreement . . . ."  A182 (emphasis added).  In terms of products, however, it is limited to "Ecolux's LED signal products subject to discovery and/or accused by Relume of infringement in the [earlier] Civil Action."  *Id.*

Given the widely different scope between the Section 2 and the Section 5 rights, RCT is wrong to attack the district court's interpretation as rendering Section 5 "completely superfluous."

### 2. RCT's Paragraph-by-Paragraph Analysis Would Render Section 14 Virtually Meaningless

RCT's argues that the only rights that can be assigned under the Section 14 global assignment provision of the Settlement Agreement are those rights that are

granted in other portions of the agreement to "successors" and "assigns." Appellants' Br. at 12–16. This argument is illogical.

Section 14 was not included to allow successors and assigns to invoke rights otherwise granted to them in the Settlement Agreement. Under Michigan law, the express references to "successor-in-interest" and "assigns" in the various sections referenced by RCT (*i.e.*, Sections 5 and 8) were sufficient to permit the successors and assigns to enforce those rights—even in the absence of the broad assignment language in Section 14. *See, e.g., Ketcherside v. Paramount Fitness Corp*., 2013 WL 1091079, *4 (E.D. Mich. Mar. 15, 2013) (finding that third party had right to enforce the agreement at issue because it was expressly referenced in the agreement); *Vanerian v Charles L Pugh Co., Inc.,* 761 N.W.2d 108, 112–14 (Mich. Ct. App. 2008) (same).

Because of the above, Section 14 was not needed to render the rights granted in Sections 5 and 8 assignable. Thus, as noted by the district court "the only reasonable interpretation of Section 14 is that the parties intended Ecolux's successors and assigns to enjoy all the rights of Ecolux under the Agreement." A8. Those rights include the license rights granted in Section 2. There is simply no other valid reason why Section 14 would have been included in the Settlement Agreement.

18

## III. RCT's Argument Concerning an Alleged Defect in the Closing Documents is Without Merit

As a final measure, RCT alleges that there was a "flaw in the closing documents" related to GE's acquisition of Ecolux that bolsters a conclusion that "a material issue of fact exists" and constitutes "powerful parol evidence" that the Settlement Agreement was not fully assignable. Appellants' Br. at 4, 7, 18. This argument is without merit.

### A. There Are No Genuine Issues of Material Fact Relating to the Assignability of the Settlement Agreement or Its Assignment to GE

Initially, RCT's argument relates to a matter over which there is no dispute. The assignability of the Settlement Agreement in general and its assignment to GE in particular, is not—and has never been—disputed. *See supra* at 4. *See also* Appellants' Br. at 3 ("Ecolux explicitly assigned the Settlement Agreement with Relume to GE."); *id.* at 8 ("In this case, it is undisputed that Relume provided authorization to transfer or assign the Settlement Agreement to a future unknown third party such as GE.").

There are no factual issues related to the assignability of the Settlement Agreement or its assignment to GE which could warrant reversal of the district court's summary judgment.

## B. RCT's Argument is Based on a Misreading of the Asset Purchase Agreement and Lacks Factual Support

Additionally, RCT's argument both: (i) is based on a misreading of the Asset Purchase Agreement for the transaction in which GE acquired Ecolux, and (ii) lacks factual support.

RCT's argument is premised on the notion that Exhibit 6.2(k) to the Asset Purchase Agreement should have included—but did not include—an opinion that the Settlement Agreement was assignable to GE.[1]  Appellants' Br. at 4.  The premise of RCT's argument is incorrect.

The Asset Purchase Agreement at issue relates to GE's acquisition of Ecolux.  A192–A237.  The Asset Purchase Document, dated August 3, 2000, is not itself a "closing document" but rather a document that contemplated a closing four weeks later, on August 31, 2000.  A192 at Section 1.2 ("at the Closing"), A220 at Section 6.1 (defining "Closing Date" as August 31, 2000).

Section 6.2 of the Asset Purchase Agreement listed various items Ecolux was to provide to GE "[a]t or prior to the time of Closing."  A221.  Section 6.2(k) indicated that two of the items to be provided at or prior to closing were: (a) an opinion from specified Canadian counsel "substantially in the form attached hereto

---

[1] At the time of the Asset Purchase Agreement, GE was operating under the name GELcore, LLC.  This point is not in dispute.  *See* Appellants' Br. at 3 ("Appellee GE, then operating under the name GELcore, LLC, acquired the business and substantially all of the assets of Ecolux under an Asset Purchase Agreement").

as **Exhibit 6.2(k)**" and (b) an opinion "that the settlement agreement between Relume and [Ecolux] is fully assignable to [GE], in a form reasonably satisfactory to [GE]." A222 at Section 6.2(k) (emphasis in original).

As the preceding language makes clear, the Exhibit 6.2(k) upon which RCT's argument is based was never intended to be, or to include, an opinion of assignability. Rather, it merely provided the form of an opinion to be provided on matters unrelated to the assignability of the Settlement Agreement. Accordingly, the absence of an opinion of assignability in Exhibit 6.2(k) is not unexpected, and certainly is not evidence of a genuine issue of material fact justifying reversal of the district court's summary judgment.

Apart from Exhibit 6.2(k), RCT has not pointed to any evidence supporting its position that an opinion of assignability was not provided to GE prior to closing. There is, therefore, no evidence of record supporting its position that an opinion of assignability should have been, but was not, provided to GE and its argument in this respect is without factual support.

## C. RCT's Parole Evidence Argument is Misplaced

Moreover, RCT's argument that "Ecolux's decision not to supply a promised legal opinion of full assignability . . . is powerful parol evidence of Ecolux's intent not to have bargained for full assignability" is misplaced. Appellants' Br. at 7.

First, it is based on a premise without any factual support in the record. As explained above, there is no evidence of record that suggests Ecolux should have—but did not—provide any opinion of assignability in connection with the closing of the GE-Ecolux transaction.

Second, there is no basis for consideration of parol evidence in this matter. As found by the district court, the contract provisions from the Settlement Agreement at issue here are unambiguous. A8. As a matter of law, therefore, there is no basis for consideration of any parol evidence. *See, e.g., Grinnell Bros. v. Brown,* 171 N.W. 399, 400 (1919).

### D. RCT's Parole Evidence Argument is Not Presented Below, and Thus Was Waived

Moreover, at no time did RCT present before the district court its contention that alleged issues associated with "closing documents" gave rise to a specific genuine issue of material fact precluding summary judgment. *See, e.g., Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322–23 (Fed. Cir. 2008) ("'prudential considerations' articulated by the Supreme Court counsel against hearing new arguments for the first time on appeal absent limited circumstances.")

22

# CONCLUSION

For at least the foregoing reasons, the district court's summary judgment of non-infringement because GE is licensed under the asserted patent should be affirmed.

Date: May 15, 2014                    Respectfully submitted,

                                      /s/ Richard L. Rainey
                                      Richard L. Rainey
                                      Executive Counsel, IP Litigation
                                      GENERAL ELECTRIC COMPANY

                                      /s/ Robert J. McAughan, Jr.
                                      Robert J. McAughan, Jr.
                                      Bruce J. Cannon
                                      SUTTON MCAUGHAN DEAVER PLLC
                                      Three Riverway, Suite 900
                                      Houston, Texas 77056
                                      713-800-5700, Telephone
                                      713-800-5699, Facsimile
                                      bmcaughan@smd-iplaw.com
                                      bcannon@smd-iplaw.com

                                      *Attorneys for Defendant-Appellee*
                                      *GE Lighting Solutions, LLC*

# United States Court of Appeals
## for the Federal Circuit

*Relume Corporation Trust v. GE Lighting Solutions, LLC,* 2013-1565

### CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by SUTTON MCAUGHAN DEAVER PLLC, Attorneys for Appellee to print this document. I am an employee of Counsel Press.

On **May 15, 2014** counsel has authorized me to electronically file the foregoing **Brief for Appellee GE Lighting Solutions, LLC** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Timothy J. Haller (Principal Counsel)
Brian E. Haan
Daniel R. Ferri
Niro, Haller & Niro
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733
haller@nshn.com
bhaan@nshn.com
dferri@nshn.com

Robert P. Greenspoon
Flachsbart& Greenspoon, LLC
333 North Michigan Avenue
27th Floor
Chicago, Illinois 60601
(312) 551-9502
rpg@fg-law.com

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be delivered to the Court within the time provided in the Court's rules.

May 15, 2014

/s/ Robyn Cocho
Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

    1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

  X   The brief contains <u>5,042</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

     The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

    2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  X   The brief has been prepared in a proportionally spaced typeface using <u>MS Word 2013</u> in a <u>14</u> point <u>Times New Roman</u> font or

     The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.

<u>May 15, 2014</u>          /s/ Robert J. McAughan, Jr._____
                        Robert J. McAughan, Jr.
                        *Counsel for Defendant-Appellee*
                        *GE Lighting Solutions, LLC*